IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SELECTIVE WAY INSURANCE       :
COMPANY,
                              :
    Plaintiff,
                              :
v.                                Civil Action No. GLR-11-1732
                              :
CNA INSURANCE, et al.,
                              :
    Defendant.
                              :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a dispute concerning Defendant National Fire Insurance Company's ("NFI")[1] obligation to indemnify Plaintiff Selective Way Insurance Company ("Selective") for payments made to Selective's insured following a masonry error. Currently pending is Selective's Motion for Summary Judgment (ECF No. 59) and NFI's Cross-Motion for Summary Judgment (ECF No. 64). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For reasons outlined in specific detail below, the Court will grant NFI's Motion and deny Selective's Motion because the Builder's Risk Policy exclusions bar coverage.

---

[1] NFI alleges that it is incorrectly pled as "CNA Insurance." (See Cross-Mot. for Summ. J. at 1, ECF No. 64). As a result, the Court will only reference NFI in this Memorandum Opinion.

## I. BACKGROUND

On or about October 15, 1997, the Whiting-Turner Contracting Company ("Whiting-Turner") entered into a construction contract with the University of Maryland, Baltimore to construct an addition to the School of Pharmacy building (the "Project"). (Pl.'s Mot. for Summ. J. ["Pl.'s Mot."] Ex. B, ECF No. 59-5). The contract required Whiting-Turner to purchase and maintain builder's risk insurance naming several parties as additional insured, including any subcontractors on the Project. (Id. at 45-48).[2] Whiting-Turner thereafter procured a Builder's Risk Policy (the "Policy") through NFI with a coverage period of December 20, 2009, through December 20, 2010. (Pl.'s Mot. Ex. C, ECF No. 59-6).

On or about January 28, 2009, Whiting-Turner hired Banner Masonry Corporation ("Banner") as a subcontractor to perform masonry work on the Project. (Pl.'s Mot. Ex. D, ECF No. 59-7). On or about June 2, 2010, Banner allegedly damaged an Uninterrupted Power Source ("UPS") unit at the Project site during a cutting operation. (Am. Compl. ¶ 15, ECF No. 35). As a result of the alleged damage, Whiting-Turner reduced Banner's contract payment by $168,637.00. (Am. Compl. ¶ 16; Def.'s Cross-Mot. for Summ. J. Lem Aff. ["Lem Aff."] Ex. 4, ECF No. 64-

---

[2] All citations to court documents in this Memorandum Opinion refer to CM-ECF pagination.

3). Banner thereafter submitted an insurance claim to its liability insurer, Selective, who provided coverage and indemnification to Banner in the amount of the contract reduction. (Am. Compl. ¶ 18).

Prior to providing coverage to Banner, however, Selective investigated the UPS unit incident. The investigation revealed that a Banner mason cut dampers into a block wall in the basement with a wet saw, which required the mason to cover the UPS unit with plastic to avoid leakage. (Lem Aff. Ex. 3, at 37). According to Selective, the mason "negligently failed to properly cover the unit which resulted in water and slurry from the masonry cut leaking into the unit." (Id.) Selective concluded that Banner's negligence caused the damage to the UPS unit, thereby triggering coverage under the Selective liability policy. (Lem Aff. Ex. 1, at 13; Lem Aff. Ex. 2, at 20).

After Selective made payment to Banner, Banner assigned all title, interest, and right to recover the $168,637.00 "under and pursuant to any and all insurance policy(ies), including but not limit to," the Policy Whiting-Turner procured for the Project. (Pl.'s Mot. Ex. F, ECF No. 59-12). In December 2010, Selective sold the UPS unit as salvage for $5,951.25, thereby reducing its net payment on Banner's insurance claim. (Am. Compl. ¶ 18). According to Selective, Whiting-Turner failed to respond to

3

Selective's requests for information regarding the Policy provider, NFI. (Am. Compl. ¶¶ 20-22).

In January 2011, Selective initiated this action in the Court of Common Pleas of Philadelphia County, Pennsylvania. (Pl.'s Mot. at 1). The Complaint alleged breach of contract, indemnification, and contribution against Whiting-Turner, CNA Insurance, and NFI. (Whiting-Turner Mot. to Dismiss Ex. 1, ECF No. 4-1). On or about June 2, 2011, Whiting-Turner removed the case to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. (Pl.'s Mot. at 1). Whiting-Turner filed a Motion to Dismiss soon thereafter. (ECF No. 4).

On June 13, 2011, NFI moved for a transfer of venue from the Eastern District of Pennsylvania to this Court. (ECF No. 5). The parties stipulated to the dismissal of the claims against Whiting-Turner on June 16, 2011 (ECF No. 8), and the Honorable Gene E.K. Pratter granted NFI's motion to transfer the case to this Court on June 21, 2011 (ECF No. 9). Selective filed an Amended Complaint on June 19, 2012. (ECF No. 35). At the conclusion of discovery, Selective and NFI filed the pending Cross-Motions for Summary Judgment on April 2, 2013, and April 16, 2013, respectively. (ECF Nos. 59, 64).

4

## II. DISCUSSION

**A.  Standard of Review**

Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

A "material fact" is a fact that might affect the outcome of a party's case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

In resolving the motion, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  When the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'"  Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

**B.    Analysis**

The Court holds that NFI is entitled to judgment as a matter of law because Banner's negligent conduct fits squarely within the Policy exclusions for neglect and faulty workmanship. As a result, Selective is not entitled to indemnification or contribution under the Policy regardless of whether it holds an insurable interest in the UPS unit. Therefore, the Court will grant NFI's Cross-Motion for Summary Judgment and deny Selective's Motion for Summary Judgment.

In Maryland, an insurance policy is interpreted under ordinary contract principles. State Farm Mut. Auto. Ins. Co. v. DeHaan, 900 A.2d 208, 225-26 (Md. 2006). Under this standard, Maryland courts "construe the instrument as a whole to determine the intention of the parties," which includes analyzing the plain language of the policy by according the words their ordinary and accepted meaning unless evidence shows the parties intended otherwise. Clendenin Bros., Inc. v. U.S. Fire Ins. Co., 889 A.2d 387, 393 (Md. 2006). If the policy terms are plain and unambiguous, the court "will determine the meaning of the terms of the contract as a matter of law." Cole v. State Farm Mut. Ins. Co., 753 A.2d 533, 537 (Md. 2000). Conversely, any ambiguities in the policy will be resolved against the drafting party. Clendenin, 889 A.2d at 395.

Both parties propound arguments regarding whether Banner, and hence Selective, has an insurable interest in the UPS unit that would cause the Policy to cover the UPS unit damage. The dispute regarding Selective's insurable interest, however, is not germane to the resolution of the pending Motions because the Policy exclusions apply. Therefore, even if Selective has an insurable interest in the UPS unit, the Policy exclusions bar coverage.

Policy exclusions 2.m. and 3.c. provide, in relevant part, that NFI will not pay for loss or damage caused by or resulting from the "[n]eglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss" and "[f]aulty, inadequate or defective . . . workmanship, . . . installation, construction, renovation, remodeling, grading, [or] compaction . . . ." (Pl.'s Mot. Ex. C, at 56). It is undisputed that Selective concluded that the damage to the UPS unit was the result of Banner's negligence. (See Lem Aff. Ex. 1, at 13; Lem Aff. Ex. 2, at 20; Lem Aff. Ex. 3, at 37). Specifically, a Banner mason failed to cover the UPS unit properly with plastic to avoid leakage while utilizing a wet saw in the area of the unit. (See id. Ex. 3, at 37). Banner's actions fit squarely within Policy exclusions 2.m. and 3.c. Moreover, Selective fails to provide any evidence to the

contrary.[3] Therefore, the Court holds that, as a matter of law, the Policy exclusions bar coverage in this matter due to Banner's negligent actions.

Accordingly, NFI has met its burden of showing that there is no genuine issue of material fact for trial and that it is entitled to judgment as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS NFI's Cross-Motion for Summary Judgment (ECF No. 64) and DENIES Selective's Motion for Summary Judgment (ECF No. 59). A separate Order follows.

Entered this 15th day of July, 2013

> _____/s/_____
> George L. Russell, III
> United States District Judge

---

[3] In fact, Selective does not attempt to rebut NFI's argument that the Policy exclusions apply.